# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JANET LANDESBERG and PHIL LANDESBERG, | No. 57740-2-II |
| Appellants, | |
| v. | |
| FAIRWAY VILLAGE HOMEOWNERS ASSOCIATION, and JUDY HOOPER,, | PUBLISHED OPINION |
| Respondents, | |
| LYNN WILLIAMS and JAN WYNINGER, | |
| Defendants Below | |

VELJACIC, A.C.J.— Janet and Phil Landesberg (the Landesbergs) own a home in Fairway Village, a housing development in Vancouver. The Landesbergs' property is governed by the Fairway Village Homeowners Association (the HOA). One of its governing documents, the declaration of covenants, conditions, and restrictions (the Declaration) allows display of "any political sign protected by law." Clerk's Papers (CP) at 331. The Declaration also provides that "[p]olitical signs are not to be displayed more than 60 days prior to an election." CP at 112.

RCW 64.38.034(1) provides that HOA governing documents "may not prohibit the outdoor display of political yard signs by an owner or resident on the owner's or resident's property before any primary or general election." HOAs are permitted to "include reasonable rules and regulations regarding the placement and manner of display of political yard signs." *Id*.

The Landesbergs displayed a political sign in their yard more than 60 days before an upcoming primary election. The HOA requested that they remove the yard sign consistent with the HOA rules limiting display to the period 60 days prior to an election. The Landesbergs complied and then filed suit against the HOA and others, claiming that the HOA violated RCW 64.38.034(1) by impermissibly prohibiting the display of a political yard sign before an election. The Landesbergs moved for summary judgment, asserting that displaying political yard signs before an election is unambiguously protected by RCW 64.38.034(1) and that the HOA's 60-day limitation violated the statute.

The HOA cross-moved for summary judgment on the ground that RCW 64.38.034(1) provides the authority to impose reasonable regulations on the placement and manner of political yard signs. Specifically, the HOA asserted that the term "manner" in the statute necessarily includes "time" such that the statute allows the HOA to regulate the time in which a political sign is displayed. *Id*. The trial court granted the HOA's motion for summary judgment and denied the Landesbergs' motion for summary judgment.

We reverse the grant of summary judgment. Rather than interpreting the term "manner" in the statute to also include "time" as the HOA argued, we conclude that RCW 64.38.034(1) expressly addresses whether an HOA can restrict the time period during which a political yard sign may be displayed. We hold that RCW 64.38.034(1) unambiguously disallows an HOA from prohibiting the display of political yard signs *before* an election. We therefore reverse and remand for the trial court to enter an order denying the HOA's motion for summary judgment and granting the Landesbergs' motion for summary judgement as to their statutory and breach of contract claims and for further proceedings consistent with this opinion.

FACTS

I.    BACKGROUND FACTS

Since 2014, Janet and Phil Landesberg have owned a house in the Fairway Village Community in Vancouver.  The HOA was established in 1982 and operates pursuant to the Homeowner Association Act (HAA), chapter 64.38 RCW.  The HOA governing documents include a declaration of covenants, conditions, and restrictions (the Declaration).  The Declaration operates as "a set of covenants, conditions and restrictions running with the land or [as] equitable servitudes."  CP at 244.

In 2003, the HOA amended the Declaration to broadly state that "no sign, except a security sign issued by the installer, shall be erected or displayed upon any unit, yard or common area without prior written permission from the Architectural Review Committee" with a few exceptions.  CP at 237.  In 2005, after the legislature enacted RCW 64.38.034(1), the HOA board of directors (the HOA Board) adopted a new policy that allowed residents and owners to display political signs in their yards without restriction.  This policy was labeled Policy 2005-3.

In 2015, the HOA again amended its Declaration.  Section 2.8.1 of the 2015 version of the Declaration provides in part,

> No signs, except a security system sign issued by the installer, or a "No Soliciting" sign if the Owner desires, *or any political sign protected by law*, shall be erected or displayed upon any Lot.  Political Signs must be sized and placed in conformance with Rules and Regulations established by the Board and must be removed within 3 days of election.

CP at 82 (emphasis added).

In 2016, the HOA adopted a "Rules & Regulations Manual for Property Improvements and Maintenance" (PIM manual).  Rule 3.14(c)(1) of this manual provides that,

> Political signs may not be posted on Common Areas and may not be placed on a Lot in such a way that they obstruct drivers' lines of sight.  *Political signs are not*

> *to be displayed more than 60 days prior to an election and must be removed within three days of the election.* No sign that requires more than a single stake for support is permitted. Banner-type signs requiring more than one support are not allowed.

CP at 112 (emphasis added).

In September 2019, Janet Landesberg wrote to the HOA Board expressing concern over the legality of rule 3.14(c)(1) in light of RCW 64.38.034(1). The HOA Board referred the matter to a committee in charge of rewriting and correcting the PIM manual. Janet Landesberg was appointed to the committee, and collectively, the committee submitted proposed changes to the Declaration and the PIM manual. The HOA Board did not adopt the committee's proposed changes.

On March 30, 2021, more than 60 days before the August 3, 2021 primary, the Landesbergs placed a political sign in their front yard. The HOA e-mailed the Landesbergs, requesting that they remove the sign until June 3, 2021, 60 days before the primary election. The Landesbergs complied and subsequently sued the HOA. The Landesbergs alleged, among other claims, that the HOA impermissibly prohibited their display of a political yard sign before an election and thus violated the Declaration, which permits the display of any political sign protected by law.

Both parties moved for summary judgment. The trial court ruled that RCW 64.38.034(1) is ambiguous and that the legislature intended that the terms "placement" and "manner" permit the HOA to impose reasonable regulations dictating when signs may be displayed. 1 Rep. of Proc. (RP) at 21. Accordingly, the trial court denied the Landesbergs' motion for partial summary judgment and granted summary judgment in the HOA's favor. The Landesbergs appeal.

II.     HISTORY OF RCW 64.38.034(1)

The HOA operates pursuant to the HAA, located in chapter 64.38 RCW. In 2005, the legislature enacted Substitute Senate Bill 6064, amending the HAA to include RCW 64.38.034(1).

4

RCW 64.38.034(1) states that an HOA "may not prohibit the outdoor display of political yard signs by an owner of resident on the owner's or resident's property before any primary or general election. The governing documents may include reasonable rules and regulations regarding the placement and manner of display of political yard signs." As it progressed through the legislative process, the bill was amended from its original form and had several public committee hearings.

First, the legislature initially included, and subsequently removed, a provision that would have prevented HOAs from prohibiting the display of a political sign "for a period of ninety days before any primary or election." CP at 69. The bill's sponsor, described the removal of this language in testimony before the Senate Financial Institutions, Housing and Consumer Committee. He asserted that it was taken out because "there's really no reason for a time limit . . . if political free speech is political free speech. It shouldn't be constrained to a time limit." CP at 575.

Second, during a hearing in the House Judiciary Committee, the bill's sponsor described the purpose of the proposed legislation as addressing the problem of "people signing away their constitutional right to free speech." CP at 589. Subsequently, the legislative director for the American Civil Liberties Union of Washington reiterated this description—asserting that the bill was intended to protect "fundamental free speech right[s]" from infringement by HOA governing documents. CP at 592. The bill report also included references to constitutional free speech rights, including a paragraph dedicated to outlining First and Fourteenth Amendment speech protections.

RCW 64.38.034(1) does not exist in a vacuum; rather, it operates as part of Washington's HOA regulatory framework. Specifically, the HAA governs homeowners' associations created prior to 2018. In 2018, the legislature enacted the Washington Uniform Common Interest Ownership Act (WUCIOA), located in chapter 64.90 RCW. The WUCIOA automatically applies

to HOAs created on or after July 1, 2018. RCW 64.90.075(1). It does, however, provide a mechanism for communities to convert from HAA governance to WUCIOA governance. RCW 64.90.095. In preserving the preexisting HAA statute and providing a means of conversion, the legislature created two distinct HOA regulatory structures.

Similar to the HAA, WUCIOA has a provision allowing HOAs to adopt rules regarding the display of political signs. RCW 64.90.510(2) states, "[HOAs] may not prohibit display of signs regarding candidates for public or association office, or ballot issues, on or within a unit or limited common element, but the association may adopt rules governing the *time*, place, size, number, and manner of those displays." (Emphasis added.) Unlike RCW 64.38.034(1), RCW 64.90.510(2) expressly and broadly authorizes HOAs to enact time-based rules governing the display of political signs.

Finally, within the HAA itself, RCW 64.38.034(1) is not the only provision outlining parameters on an HOA's power to regulate speech. Prior to the enactment of RCW 64.38.034(1), the legislature enacted RCW 64.38.033 to prevent an HOA from "prohibit[ing] the outdoor display of the flag of the United States" but allowing an HOA to "include reasonable rules and regulations . . . regarding the placement and manner of display of the flag of the United States." RCW 64.38.033(1). Like the provision governing the display of political signs, the flag provision was also included in WUCIOA and includes language specifically authorizing HOAs to reasonably regulate time in addition to placement and manner of flag display. RCW 64.90.510(1).

## ANALYSIS

The Landesbergs contend that the trial court erred in granting the HOA's motion for summary judgment and denying their motion for summary judgment. We agree.

## I. STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment de novo. *Maslonka v. Pub. Util. Dist. No. 1 of Pend Oreille County*, 1 Wn.3d 815, 824, 533 P.3d 400 (2023). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). Similarly, we review questions of statutory interpretation de novo. *Desmet v. Dep't of Soc. & Health Servs.*, 200 Wn.2d 145, 153, 514 P.3d 1217 (2022).

## II. RCW 64.38.034(1)

The Landesbergs argue that the HOA lacked authority under RCW 64.38.034(1) to prevent them from displaying political yard signs before an election. Specifically, they interpret the statute as allowing an HOA to implement "reasonable rules regarding the manner and placement of political signs," but argue that it does not permit an HOA to impose a time-based prohibition on the outdoor display of a political sign before an election. Br. of Appellant at 23. The Landesbergs assert that PIM Rule 3.14(c)(1) is unlawful in so far as it prohibits the display of political signs more than 60 days prior to an election.[1]

The HOA responds that PIM Rule 3.14(c)(1) is "a reasonable regulation regarding the placement and manner of display of political yard signs" that is permissible under RCW 64.38.034(1). Br. of Resp't at 22. The HOA points to the dictionary definitions of "placement," "manner," and "display" to conclude that they have the authority to regulate "with respect to or

---

[1] The Landesbergs do not challenge the fact that PIM Rule 3.14(c)(1) requires that signs be removed three days after an election, that signs not be displayed in common areas, or that signs not obstruct lines of sight. Rather, they concede that these restrictions are permitted under a plain language reading of RCW 64.38.034(1) because they impose a time restriction *after* an election or represent reasonable regulations regarding the *placement* and *manner of display* of political signs. *Id.*

concerning an act or instance of placing or mode of procedure or presentation to put or spread before the view." Br. of Resp't at 23. Thus, the HOA's reading of the "unlimited language" of the statute permits them to "broadly but reasonably regulate how and in what way political signs can be displayed." Br. of Resp't at 23. Put another way, the HOA contends that the statute provides them with the authority to regulate the "who, what, when, where and why" of political sign display pursuant to the plain meaning of "placement" and "manner." Br. of Resp't at 16.

For the reasons discussed below, we hold that the plain language of RCW 64.38.034(1) is a proscription on the HOA's ability to impose time restrictions on placement of political signs before an election. Specifically, the statute precludes the HOA from prohibiting the display of political signs *before* an election, but allows the HOA to reasonably regulate the placement and manner of display of political signs and to require signs to be removed within a certain time *after* the election.

A.     Legal Principles

Our goal when interpreting a statute is to determine the legislature's intent and give effect to that intent. *Ekelmann v. City of Poulsbo*, 22 Wn. App. 2d 798, 807, 513 P.3d 840 (2022). In construing statutory language, we give undefined terms their plain and ordinary meaning. *Id.* To determine this meaning, we may consider a statute's plain language, as well as the context of the statute, related statutes, and the statutory scheme as a whole. *Id.* We may also refer to dictionary definitions to discern the plain meaning of statutory terms. *Howard v. Pinkerton*, 26 Wn. App. 2d 670, 676, 528 P.3d 396 (2023).

We must, however, interpret and construe all statutes such that all the language used is given effect, with no portion rendered meaningless or superfluous. *City of Seattle v. Long*, 198 Wn.2d 136, 148, 493 P.3d 94 (2021). To that end, we must not insert language into an

unambiguous statute if the legislature has not included it because "[w]e assume the legislature 'means exactly what it says.'" *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 964, 977 P.2d 554 (1999)).

There must be more than other *possible* interpretations for statutory language to be considered ambiguous; the statutory language must have more than one *reasonable* interpretation. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 354, 144 P.3d 276 (2006). "Where two interpretations of statutory language are equally reasonable, our canons of construction direct us to adopt 'the interpretation which better advances the overall legislative purpose.'" *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 729, 406 P.3d 1149 (2017) (quoting *Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 321, 545 P.2d 5 (1976)). If the meaning of the statutory language is clear, the statute is not ambiguous and the analysis ends. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 461, 430 P.3d 655 (2018). We need not utilize interpretive tools such as legislative history when statutory language is unambiguous. *Id.*

In *Desmet*, our Supreme Court looked at the dictionary definition of a specific statutory term, "comply." 200 Wn.2d at 156. The court examined the context of the statute and the treatment of the language at issue in other analogous contexts to ascertain if more than one of these possible interpretations might be reasonable. The court concluded that the language in question was not ambiguous because there was only one reasonable interpretation in context. *Id*. We rely on a similar analysis here.

Turning to the plain language of the statute at issue, RCW 64.38.034(1) states that an HOA "may not prohibit the outdoor display of political yard signs by an owner or resident on the owner's or resident's property *before* any primary or general election. The governing documents may include reasonable rules and regulations regarding the *placement* and *manner of display* of political

9

yard signs." (Emphasis added.) The plain language of subsection (1) conveys that while reasonable rules and regulations regarding the placement and manner of display of political yard signs may be undertaken by an HOA, the HOA may not prohibit display of the signs before any primary or general election. We must determine then whether the plain language of "placement" and "manner" in RCW 64.38.034(1) is ambiguous and if not, whether a plain language reading of these two words authorizes the HOA to regulate "time," despite the plain language of the statute's first sentence.

B.    Placement, Manner, and Time

"Placement" and "manner" are not defined in the statute, so we turn first to their dictionary definition. "Placement" is defined as "an act or instance of placing." WEBSTER'S THIRD NEW INT'L DICTIONARY 1727 (2002). "Placing" has several definitions, including "to put in or as if in a particular place or position . . . to direct to a desired spot . . . to distribute in an orderly manner . . . to appoint to a position." *Id*. "Manner" also has several definitions, including "a characteristic or customary mode of acting . . . [a] method of artistic execution or [a] mode of presentation." *Id.* at 1376. The definition of "placement" has a clear spatial focus, describing the act of directing, distributing, or appointing something or someone to a particular location or position. The definition of "manner" has a clear stylistic focus, describing the method or mode of presentation. Neither definition expressly contemplates temporality.

The HOA points out that it is possible to infer that inherent in the act of placing something in a location or the manner in which it is presented could include a temporal component. However, the question we are tasked with resolving is whether such an interpretation is reasonable in context.

Turning to the statute's context, an interpretation of "placement" and "manner" that subsumed "time" would be unreasonable, even if it is possible. First, in analogous contexts that

10

deal with freedom of expression, the Washington Supreme Court and the United States Supreme Court have consistently treated time, place, and manner as distinct concepts. *See e.g.*, *Collier v. City of Tacoma*, 121 Wn.2d 737, 747, 854 P.2d 1046 (1993); *Sanders v. City of Seattle*, 160 Wn.2d 198, 208-09, 156 P.3d 874 (2007); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. ___, 140 S. Ct. 2335, 2346, 207 L. Ed. 2d 784 (2020); *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989); *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 795-96, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). This body of jurisprudence is important context as it demonstrates that a natural reading of regulations impacting freedom of expression is to frame time, place, and manner as distinct principles with distinguishable definitions.

While it is true that the First Amendment does not directly apply here, the longstanding use of time, place, and manner as distinct concepts in the context of speech regulation helps us discern the legislature's intent as the legislature was presumably aware of this categorization. The legislature's awareness of these distinct concepts is demonstrated in several ways.

First, the WUCIOA, enacted in 2018 and closely related to the statute at issue, expressly authorizes HOAs to "adopt rules governing the *time*, place, size, number, and manner" of political signs. RCW 64.90.510(2) (emphasis added). Thus, in a later and closely related statute, the legislature demonstrated its awareness that time, place, and manner are distinct concepts.

Second, the legislature acted similarly with another provision of the HAA. RCW 64.38.033(1) similarly prevents an HOA from "prohibit[ing] the outdoor display of the flag of the United States" but allows an HOA to "include reasonable rules and regulations . . . regarding the placement and manner of display of the flag of the United States." This restriction was also included in the recently enacted WUCIOA, and just like the provision here, included an addition

that specifically authorized HOAs to reasonably regulate time as well as placement and manner. RCW 64.90.510(1).

Finally, and most importantly, the first sentence of RCW 64.38.034(1) specifies the parameters within which the HOA is permitted to regulate the time when political signs may be displayed; it states clearly that an HOA may not prohibit the display of political signs "*before* any primary or general election." (Emphasis added.) Notably, the first sentence does not include parameters for the HOA to reasonably regulate placement and manner. If we hold that the regulation of "placement" and "manner" also includes "time," we would render the first sentence superfluous, and we presume that the legislature does not engage in superfluous acts. Further, if we were to read the first sentence, as the dissent suggests, as simply a prohibition on absolute bans against political signs, then the clause "before any primary or general election" becomes superfluous. The regulation enacted by the HOA highlights why such a result is unsupported by a plain language reading of the statute. The HOA has prohibited the display of political signs more than 60 days before a primary or general election. To read the statute as permitting such a regulation would either render the first sentence meaningless or would insert the word "except" into the statute. These results are both unreasonable and so the possibility that "placement" and "manner" include "time" is not a reasonable interpretation of this statute.

The dissent asserts that our reading of the statute is unreasonable because in the modern age, elections for some candidates or issues never end, and thus, requiring HOAs to allow signs "before" an election would mean no temporal regulation could occur at all, at least for some candidates and ballot propositions. Although some candidates or ballot propositions may be outliers in this regard, that does not excuse ignoring the plain language of the statute. Further, this is the type of policy concern that should be addressed by the legislature, not through a strained

judicial reading of the plain statutory language. Taken together, a plain reading of RCW 64.38.034(1) indicates that it governs the ability of an HOA to regulate the distinct concepts of time, place, and manner. Such a reading aligns with the dictionary definitions of "placement" and "manner," the usual and ordinary approach to speech-based regulation, and avoids rendering part of this statute superfluous. Thus, we hold (1) that the terms "placement" and "manner" are unambiguous and (2) that these terms do not include "time."

C. Comment on Legislative History

Because we hold that RCW 64.37.034(1) is unambiguous, we need not reach the statute's legislative history to discern the legislature's intent. *Spokane County*, 192 Wn.2d at 458. Nevertheless, we note that the legislative history in this case is admittedly murky and bears addressing, in large part because it is discussed extensively by the HOA and the Landesbergs in their briefing.

Here, when deliberating over RCW 64.38.034(1), the legislative committee hearings contain repeated discussions of *Collier*, a case analyzing whether a City of Tacoma regulation prohibiting the display of political signs more than 60 days prior to an election was a constitutional restriction on the time, placement, or manner of political expression. *See* 121 Wn.2d 737. This discussion indicates an awareness on the part of the legislature that time, place, and manner are distinct concepts. Furthermore, we presume that the legislature is familiar with prior judicial interpretations and thus, presume that they were familiar with the body of case law framing speech regulation in terms of time, place, or manner.

One senator's testimony in a committee hearing creates some confusion. Specifically, the senator testified that he had "a problem with people signing away their constitutional right to free speech. And so *for a reasonable period prior to election* on a piece of property that you've bought

and paid for and pay taxes on, you ought to darn well be able to put up a yard sign if you want to." CP at 589 (emphasis added). It is, however, also true that the same senator testified in a different committee hearing where the senator stated, "I took [the time limit] out and said, okay, you know, *there's really no reason for a time limit*, I suppose . . . if political free speech is political free speech. It shouldn't be constrained to a time limit." CP at 575 (emphasis added). It is difficult to discern a final position, but what this testimony does show is that the legislature was aware that a time constraint is a distinct concept from a restriction on placement and manner.

Finally, the legislature's actions are instructive. During the legislative process, a 90-day time constraint was removed by amendment in favor of language that broadly prevented HOAs from prohibiting the display of political signs before an election. The conflicting committee testimony does not vitiate the fact that the legislature demonstrated awareness that time, place, and manner are distinct concepts in the context of speech regulation and considered but rejected language that would have permitted HOAs to prohibit political signs displayed more than 90 days before an election. Instead, the legislature adopted a broader proscription on prohibiting the display of political signs *before* an election. Taken together, the legislative history supports the plain language reading we describe above.

III.    BREACH OF CONTRACT CLAIM

The Landesbergs also allege breach of contract, asserting that the HOA violated the Declaration by prohibiting a political sign protected by law. Both parties agree that this claim turns on whether the display of a political sign before an election is protected by law.

Our analysis above concludes that display of political signs before an election is protected by law based on a plain reading of RCW 64.38.034(1). Based on that conclusion, the HOA violated the Declaration by prohibiting the protected display of a political sign before an election.

14

Accordingly, as a matter of law, the trial court should have granted the Landesbergs' motion for summary judgment as to their breach of contract claim.

CONCLUSION

For the reasons described above, we reverse the trial court's grant of summary judgment in favor of the HOA as to the statutory and breach of contract claims. We also reverse the trial court's denial of partial summary judgment to the Landesbergs and grant their motion for partial summary judgment as to their statutory and breach of contract claims. Accordingly, this case is remanded to the trial court for further proceedings consistent with this opinion.

_____
Veljacic, A.C.J.

I concur:

_____
Glasgow, J.

15

MAXA, J. (dissenting) – The majority has crafted an interpretation of RCW 64.38.034(1) that is inconsistent with what the legislature intended regarding placement of political yard signs. Therefore, I dissent.

RCW 64.38.034(1) states that the governing documents of a homeowners' association "may not prohibit the outdoor display of political yard signs by an owner or resident on the owner's or resident's property before any primary or general election." However, the next sentence states, "The governing documents may include reasonable rules and regulations *regarding the placement and manner of display* of political yard signs." RCW 64.38.034(1) (emphasis added).

The homeowners' association (HOA) regulation at issue here stated that "[p]olitical signs are not to be displayed more than 60 days prior to an election." Clerk's Papers (CP) at 112. The question is whether the term "placement" in RCW 64.38.034(1) is broad enough to include *when* a political yard sign can be displayed.

A.      STATUTORY INTERPRETATION

Our goal when interpreting a statute is supposed to be to determine the legislature's intent and give effect to that intent. *Desmet v. Dep't of Soc. & Health Servs.*, 200 Wn.2d 145, 153, 514 P.3d 1217 (2022). In construing statutory language, we give undefined terms their usual and ordinary meaning. *Ekelmann v. City of Poulsbo*, 22 Wn. App. 2d 798, 807, 513 P.3d 840 (2022). We also may refer to dictionary definitions to discern the plain meaning of statutory terms. *Howard v. Pinkerton*, 26 Wn. App. 2d 670, 676, 528 P.3d 396 (2023).

If the meaning of the statutory language is clear, the statute is not ambiguous and the analysis ends. *Desmet*, 200 Wn.2d at 153. However, statutory language is ambiguous if it is subject to more than one reasonable interpretation. *Id*. at 154. In that situation, we may consider

16

other sources to ascertain the legislature's intent. *Id*. These sources include principles of statutory construction, the statute's legislative history, and relevant case law. *State v. Eyman*, 24 Wn. App. 2d 795, 837, 521 P.3d 265 (2022), *review denied*, 1 Wn.3d 1021 (2023). If two interpretations of a statute are equally reasonable, we must adopt the interpretation that best advances the statute's legislative purpose. *Id.*

B.      AMBIGUOUS STATUTORY LANGUAGE

The Landesbergs focus on the dictionary definition of "placement." The dictionary defines "placement" in relevant part as "an act or instance of placing: as . . . an orderly distribution or arrangement." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1727 (2002). The Landesbergs argue that "placement" refers only to *where* a sign is displayed, claiming that the term does not refer to *when* a sign is displayed.

The Fairway Village Homeowners Association argues that the plain language of RCW 64.38.034(1) allows HOAs to adopt reasonable regulations regarding political yard signs without any specific limitations. The legislative intent was to preclude HOAs from banning political yard signs while allowing HOAs to reasonably regulate them. Fairway Village interprets "placement" broadly to encompass any type of regulation, including when residents can display political yard signs. They assert that the only statutory requirement is that the regulation must be reasonable.

I believe that both interpretations of RCW 64.38.034(1) are reasonable. The statute does not specifically state that HOAs can regulate when political yard signs can be displayed, but the term "placement' can be broadly interpreted to include when. Therefore, the statute is ambiguous.

The majority comes up with a third interpretation not advocated by either party. According to the majority, the first sentence of RCW 64.38.034(1) addresses when political yard signs can be displayed. The majority claims that by stating that HOAs cannot prohibit political yard signs "before any primary or general election," RCW 64.38.034(1) should be interpreted as meaning that HOAs can never regulate when a political yard sign can be displayed before an election. But the display of yard signs *after* an election can be regulated.

This interpretation is creative, but it fails to recognize the realities of modern elections. When one election ends, the next one is on the horizon. Therefore, any specific time always is before "any election" and never after "any election" – if not the upcoming election then the one after that. That is why some political yard signs touting a presidential candidate have been displayed continuously since 2015. There no longer is such a thing as after "any election." As a result, the majority's interpretation would mean that an HOA could never regulate when political yard signs could be displayed – those signs could be displayed continuously, forever.

Therefore, I do not believe that the majority's interpretation is reasonable. But even if the interpretation is reasonable, it certainly is not the only reasonable interpretation. Accordingly, RCW 64.38.034(1) still is ambiguous regardless of the majority's clever interpretation.

C.     RESOLUTION OF AMBIGUITY

Because RCW 64.38.034(1) is ambiguous, we must resolve that ambiguity by considering things like the relevant case law, the statute's legislative history, and which interpretation best advances the statute's legislative purpose. *Eyman*, 24 Wn. App. 2d at 837.

18

### 1. Political Sign Case

No case has interpreted RCW 64.38.034(1). One case has addressed the display of political signs: *Collier v. City of Tacoma*, 121 Wn.2d 737, 854 P.2d 1046 (1993). In that case, a City of Tacoma ordinance limited the posting of political signs to not more than 60 days before an election and seven days after an election. *Id.* at 742-43. The Supreme Court held that this ordinance was unconstitutional as a violation of the free speech provisions of both the United States and Washington constitutions. *Id.* at 760.

This case is inapplicable here. The constitutional free speech provisions protect a person only against actions by a state actor, not against actions of a private entity. *Southcenter Joint Venture v. Nat'l Democratic Pol'y Comm.*, 113 Wn.2d 413, 419, 780 P.2d 1282 (1989). HOAs are private entities, not state actors. Therefore, they are not subject to the constitutional provisions protecting free speech.

### 2. Legislative History

Senate Bill 6064, which eventually became RCW 64.38.034(1), originally included a provision protecting when political yard signs could be displayed:

> The governing documents may not prohibit the outdoor display of political yard signs by an owner or resident on the owner's or resident's property *for a period of ninety days before any primary or election*. The governing documents may include reasonable rules and regulations regarding the placement and manner of display of political yard signs.

CP at 69 (emphasis added). However, the final version of the bill included no such time restriction. Senator Don Benton, the bill's sponsor, acknowledged this change in testimony before the Senate Financial Institutions, Housing and Consumer Committee.

> I put [the 90 day time limit] in there to mitigate complaints for the bill. But I took it out and said, okay, you know, *there's really no reason for a time limit*, I suppose, if you're not going to – if you're going to give – if political free speech is political free speech. It shouldn't be constrained to a time limit.

19

CP at 575 (emphasis added).

In later testimony about the bill before the House Judiciary Committee, Senator Benton said:

> I do have a problem with people signing away their constitutional right to free speech. And so *for a reasonable period prior to election* on a piece of property that you've bought and paid for and pay taxes on, you ought to darn well be able to put up a yard sign if you want to.

CP at 589 (emphasis added).

Jennifer Shaw, the legislative director for the ACLU of Washington, testified in support of the bill. After discussing the fact that political yard signs involve the free speech right, she stated, "*There can be reasonable limitations on when you can put the yard signs out, for instance, a number of days before the election*, things like that, but not just a complete ban." CP at 593.

In response to that comment, a representative expressed a concern about what time limitations would be appropriate: "[H]ow can I justify a 30-day limitation, for example, on political signs versus a 45-day versus a 60-day?" CP at 593. There then was a discussion about a court case involving the City of Tacoma ruling that municipalities could not limit the time of displaying political yard signs. Presumably, the reference was to *Collier*, discussed above. A representative noted that "the Supreme Court seems to have viewpoints that you can [display political signs] 365 days a year." CP at 594. Shaw replied, "An amendment that says that it can't be limited by time is not something that we would argue with." CP at 595. However, no such amendment was adopted. *See* RCW 64.38.034(1).

The House Bill Report reflects the legislature's concern about HOAs banning political signs completely, but not about HOAs regulating such signs. In the discussion of testimony for

the bill, the report stated that homeowners' associations "should be able to place *reasonable limitations* on people, but they should not be able to completely ban political signs." CP at 653 (emphasis added).

The legislative history is somewhat contradictory. The original bill contained a provision stating that the display of political yard signs could not be prohibited within 90 days of an election. But Senator Benton, the bill's sponsor, removed that provision because political free speech should not be "constrained to a time limit." CP at 575. This statement suggests that Senator Benton might not approve of allowing HOAs to determine when political yard signs could be displayed.

However, Senator Benton later stated that people should be able to display political yard signs "for a reasonable period prior to election." CP at 589. This statement suggests that under the amended bill, HOAs could regulate when political yard signs could be displayed. And Shaw, the only other person testifying regarding the bill expressly recognized that reasonable limitations on the display of political yard signs would include "a number of days before the election." CP at 593.

There was a concern expressed in the House Judiciary Committee about appropriate time limitations on the display of political yard signs. And the representatives recognized that *municipalities* could not restrict the time during which political signs could be displayed. Shaw even stated that she would not oppose an amendment stating that the display of political yard signs could not be limited by time.

Significantly, the legislative history of 64.38.034(1) included discussion of *Collier*. After discussing the issue, the House Judiciary Committee did not adopt an amendment stating that the display of political yard signs could not be limited by time. That fact suggests that the legislature

did not intend that HOAs would be precluded from regulating when political yard signs could be displayed.

What emerges from a review of the legislative history is that the legislature wanted to ensure that HOAs could not completely ban political yard signs, but they could adopt reasonable regulations regarding those signs. There is no indication that the legislature wanted to place a limitation on what types of reasonable regulations would be allowed.

I would conclude that the legislative history supports the conclusion that RCW 64.38.034(1) authorizes HOAs to regulate when political yard signs can be displayed.

3.    Subsequent Statute Regarding Regulation of Political Signs

In 2018, the legislature enacted the Washington Uniform Common Interest Ownership Act (WUCIOA), chapter 64.90 RCW. The WUCIOA applies to HOAs created on or after July 1, 2018. RCW 64.90.075(1).

Similar to RCW 64.38.034(1), the WUCIOA has a provision regarding the authority of HOAs to adopt rules regarding the display of political signs. RCW 64.90.510(2) states, "[HOAs] may not prohibit display of signs regarding candidates for public or association office, or ballot issues, on or within a unit or limited common element, but *the association may adopt rules governing the time, place, size, number, and manner* of those displays." (Emphasis added.) Unlike RCW 64.38.034(1), RCW 64.90.510(2) expressly authorizes HOAs to regulate the "time" at which residents are allowed to display signs regarding candidates for public office.

The parties disagree regarding the significance of the different language in RCW 64.90.510(2). The Landesbergs argue that by not including "time" in authorizing regulations of political signs under RCW 64.38.034(1) but including that term in RCW 64.90.510(2), the legislature intended that HOAs subject to the WUCIOA have greater authority to regulate

22

political signs. They claim that if the legislature had intended for HOAs not subject to the WUCIOA to have the same authority, it would have amended RCW 64.38.034(1) to add the term "time."

Fairway Village argues that because RCW 64.90.510(2) specifically authorized HOAs to regulate the time political signs could be displayed, it makes sense that the more general language of RCW 64.38.034(1) also encompassed the authority to regulate when political yard signs could be displayed. Fairway Village emphasizes that RCW 64.90.510(2) actually gives HOAs less discretion, expressly limiting the authority of HOAs to regulate only "time, place, size, number, and manner" of political sign displays. In contrast, RCW 64.38.034(1) grants broad authority for HOAs to adopt *any* regulations regarding the placement of political yard signs.

Although the Landesbergs' argument is not unreasonable, Fairway Village's argument makes more sense. The result of the Landesbergs' position would be that HOAs created before June 30, 2018 do not have the authority to regulate when their residents can display political yard signs, but HOAs created after June 30, 2018 do have such authority. There is no indication that the legislature intended to create such a discrepancy among HOAs. It is more reasonable to assume that the legislature believed that the more specific authority outlined in RCW 64.90.510(2) already was included in the more general language of RCW 64.38.034(1).

In addition, RCW 64.38.034(1) states that HOAs can adopt "reasonable" regulations, while RCW 64.90.510(2) does not include that term when specifying the types of regulations that could be adopted. This suggests that the drafters of RCW 64.38.034(1) were more concerned with the reasonableness of the regulations than with the specific type of the regulations.

I would conclude that consideration of RCW 64.90.510(2) supports the conclusion that RCW 64.38.034(1) authorizes HOAs to regulate when political yard signs can be displayed, or at least is neutral and does not support the opposite conclusion.

4.    Summary

I would hold that the language of RCW 64.38.034(1) authorized the HOA to enact reasonable regulations governing when residents can display political yard signs. This interpretation best advances the statute's legislative purpose – to preclude HOAs from banning political yard signs while allowing HOAs to *reasonably* regulate them. Accordingly, I would affirm the trial court's grant of summary judgment in favor of Fairway Village regarding this issue.

Maxa, J.